UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

FAIR HOUSING JUSTICE CENTER, INC.,

               Plaintiff,

          v.

WATERMARK CAPITAL GROUP LLC, WATERMARK
CAPITAL MANAGEMENT LLC, WATERMARK
DEVELOPERS LLC, 4TH AVENUE QOZB LLC,
ONE ZERO ONE LLC, 303 WYTHE AVE LLC,
CHESKY LANDAU A/K/A CHASKEL LANDAU,
1428 PUTNAM TOWERS LLC, 143 GRAHAM LLC,
BARCLAY USA LLC, THE LOKETCH GROUP INC.,
B CONTRACTORS GROUP LLC, WMCM LLC,
EMPIRE MANAGEMENT & CONSTRUCTION LLC,
YATZIV CORP, ND ARCHITECTURE & DESIGN P.C.,

               Defendants.
--------------------------------------------------------------------X

No. 25 Civ. 874

**COMPLAINT
AND JURY DEMAND**

       Plaintiff Fair Housing Justice Center, Inc., by and through its attorneys, Wang Hecker LLP, for its Complaint alleges as follows:

## <u>INTRODUCTION</u>

       1.     Watermark Capital Group LLC ("Watermark Capital"), along with its affiliated entities, is a real estate giant that in recent years has been rapidly buying and developing properties in Brooklyn and Queens.  It owns over 120 commercial properties with over 1,400 residential units, and its business continues to grow.

       2.     Watermark Capital markets itself as "tak[ing] great pride in managing all aspects of development" and working with "detail-obsessed Construction teams" that have "earned us a reputation for keeping promises."  The company declares that it "spare[s] no detail" in the development of its properties, and that it "know[s] what our . . . residents need."

3.     Unfortunately, these promises are far from a reality for residents and prospective residents with disabilities.  The construction teams' obsession with detail apparently does not extend to compliance with fair housing laws, and Watermark Capital's commitment to its residents' needs does not extend to the needs of wheelchair users, among others.

4.     To the contrary, Defendants routinely violate fair housing laws by developing and offering rental dwellings to the public that are not accessible for individuals with disabilities. Their buildings have inaccessible thresholds and doorways that prohibit individuals in wheelchairs from even entering the units, inaccessibly narrow hallways that prevent passage through the units, and inaccessibly high mailboxes and essential environmental controls, among other barriers to access.  As a direct consequence of these and other non-compliant features, Watermark Capital's residential housing is unavailable to individuals with disabilities.

5.     According to Watermark Capital's website, the business dates back nearly 20 years to 2005, when founders Wolfe Landau and David Tabak began renovating old buildings and converting them into high-end luxury apartment rentals.  Watermark Capital was officially formed in 2012 as an investment group, and Watermark Capital Management was founded in 2016 to provide management services to the Watermark Capital Group-owned properties.  As described *infra*, Defendants are all connected in different ways to the Watermark empire, with overlapping ownership and control over construction and design decisions.  The company prides itself on having "revitalized several great, historic New York neighborhoods;" it has in fact gained a reputation over the past several years for demolishing old churches and other historic buildings and replacing them with luxury apartment buildings.

6.     For nearly two decades, Plaintiff Fair Housing Justice Center has worked to promote equal housing in New York City and the surrounding area, and to remedy the

discrimination encountered by persons with disabilities by investigating and enforcing through litigation compliance with federal, state, and local fair housing laws.  Its diligent pursuit of claims like those asserted here has succeeded in protecting and expanding equal housing opportunities for New Yorkers throughout its geographic reach.

7.      Plaintiff seeks to stop the unlawful practices that Watermark Capital and its affiliates have perpetrated.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of Plaintiff's rights under the federal Fair Housing Act Amendments.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's related claims arising under New York State and City law.

9.      Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination occurred in this District and the five residential apartment buildings that are the subject of this action are located in this District.

## JURY DEMAND

10.      Plaintiff hereby demands a trial by jury.

## THE PROPERTIES

11.      Defendants have designed and constructed at least five residential properties in violation of federal and state accessibility requirements.

12.      584 Fourth Avenue ("584 Fourth") is a 9-story, 46-unit mixed-use building located in Gowanus, Brooklyn.  It was opened for first occupancy in 2023, and its final certificate of occupancy was issued on April 23, 2024.  On information and belief, Watermark

3

Capital owned, designed, constructed, and/or otherwise participated in the development of the building. According to records available on the New York City Department of Finance Office of the City Register and the Department of Buildings website, 584 Fourth is directly owned by 4th Avenue QOZB LLC, which has a listed address c/o Watermark Capital, 185 Marcy Avenue, Suite 304, Brooklyn, NY 11211. 4th Avenue QOZB LLC is on information and belief an entity owned by, controlled by, directed by, related to and/or affiliated with Watermark Capital. B Contractors Group LLC, an entity that appears to be related to Watermark Capital Group, is listed as the contractor on the project. ND Architecture & Design P.C. was the architect that designed the building.

13. 169 Johnson Avenue ("169 Johnson") is a 7-story, 52-unit rental building located in Williamsburg, Brooklyn. Its final certificate of occupancy was issued on May 8, 2023. On information and belief, Watermark Capital owned, designed, constructed, and/or otherwise participated in the development of the building. According to records available on the New York City Department of Finance Office of the City Register and the Department of Buildings website, 169 Johnson is owned by Roman Catholic Church of the Most Holy Trinity in the City of Brooklyn, which leased the property to 143 Graham LLC in 2019 as the ground tenant and developer for a 49-year term with options totaling an additional 50 years. 143 Graham LLC has a listed address with the New York Secretary of State of 543 Bedford Avenue, Suite 278, Brooklyn, NY 11211 (Defendants Watermark Capital Management LLC, Watermark Developers LLC, WMCM LLC, One Zero One LLC, and Barclay USA LLC are all located in the same building), and on other public documents has a listed address of 185 Marcy Avenue, Suite 304, Brooklyn, New York 11211. 143 Graham LLC on information and belief is an entity owned by, controlled by, directed by, related to, and/or affiliated with Watermark Capital. WMCM LLC, an

entity that on information and belief is also owned by, controlled by, directed by, related to and/or affiliated with Watermark Capital, was the contractor on the project. ND Architecture & Design P.C. was the architect that designed the building.

14.    138-25 Barclay Avenue, also known as the Haru ("138-25 Barclay") is a 7-story, 48-unit building built in 2023, located in Flushing, Queens. A final certificate of occupancy was issued on July 9, 2024. On information and belief, Watermark Capital owned, designed, constructed, and/or otherwise participated in the development of the building. According to records available on the New York City Department of Finance Office of the City Register and the Department of Buildings website, the landlord is St. Michaels Church in the Village of Flushing, which leased the property to Barclay USA LLC in 2023 for a 49-year lease with options totaling an additional 50 years. Barclay USA LLC has a listed address of 543 Bedford Avenue, Brooklyn, NY 11211 (Watermark Capital Management LLC, Watermark Developers LLC, WMCM LLC, One Zero One LLC, and 143 Graham LLC are all located in the same building), and on other public documents has a listed address of 185 Marcy Avenue, Suite 304, Brooklyn, New York 11211. Barclay USA LLC on information and belief is an entity owned by, controlled by, directed by, related to, and/or affiliated with Watermark Capital. WMCM LLC, an entity that also appears to be owned by, controlled by, directed by, related to, and/or affiliated with Watermark Capital, was the contractor on the project. ND Architecture & Design P.C. was the architect that designed the building.

15.    44 Kent Street ("44 Kent") is a 5-story, 42-unit mixed use building located in Greenpoint, Brooklyn. It was built in 2017, a final certificate of occupancy was issued on December 8, 2017, and an altered final certificate of occupancy was issued on September 7, 2018. Watermark Capital Group LLC and The Loketch Group Inc. both owned, designed,

constructed, and/or otherwise participated in the development of the building.  According to records available on the New York City Department of Finance Office of the City Register and the Department of Buildings website, the direct owner is One Zero One LLC, which has a listed address of 543 Bedford Avenue, Suite 264, Brooklyn, NY 11211.  Watermark Capital Management LLC, Watermark Developers LLC, and WMCM LLC all share the same address, and 143 Graham LLC and Barclay USA LLC are located in the same building.  One Zero One LLC on information and belief is an entity owned by, controlled by, directed by, related to, and/or affiliated with Watermark Capital.  Empire Management & Construction LLC and Yatziv Corp are listed as contractors on various Department of Buildings filings, and WMCM LLC and B Contractors Group LLC also worked on the building.  ND Architecture & Design P.C. was the architect on the project.

16.    303 Wythe Avenue ("303 Wythe") is a 4-story, 22-unit building located in Williamsburg, Brooklyn.  It was built in early 2024.  No certificate of occupancy is available on DOB NOW; an illegible handwritten certificate of occupancy that appears to be dated May 17, 2023 is available on the older Buildings Information System website, but it appears to predate the current building's completion.  According to records available on the New York City Department of Finance Office of the City Register and the Department of Buildings website, the owner is 303 Wythe Ave LLC, which has a listed address in public documents of 17 Main Street #316 in Monsey, New York 10952.  Chesky Landau a/k/a Chaskel Landau ("C. Landau") of 1428 Putnam Towers LLC is listed as the owner on public filings.  1428 Putnam Towers LLC has a listed address of 199 Lee Avenue, #962, Brooklyn, New York, 11211 with the New York Secretary of State (a listed address for Defendant B Contractors Group LLC).  On information and belief, C. Landau and his businesses are closely connected to Watermark Capital: Various

public filings, including on the New York City Housing Preservation & Development website, list Landau's address in connection with other properties as 185 Marcy Avenue, Suite 304, Brooklyn, New York, 11211 (Watermark Capital's listed address), and Watermark Capital is building a 30-story tower at 188 Duffield St. in Brooklyn on a property that C. Landau owns. On information and belief, C. Landau also may be related to Wolfe Landau, one of the founding partners of Watermark Capital. B Contractors Group LLC is the contractor for the project, and ND Architecture & Design P.C. was the architect that designed the building.

17.    584 Fourth, 169 Johnson, 138-25 Barclay, 44 Kent, and 303 Wythe collectively comprise the "Subject Properties."

## PARTIES

18.    Plaintiff Fair Housing Justice Center, Inc. ("FHJC") is a non-profit organization incorporated in the State of New York. Its office is located in Long Island City, Queens, in the Eastern District of New York. FHJC's mission is to support fair housing in the five boroughs of New York City, as well as the surrounding counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk, and Westchester. It strives to eradicate housing discrimination so that all people have equal access to housing opportunities in the New York region.

19.    Defendant Watermark Capital Group LLC ("Watermark Capital") is a domestic limited liability company formed under the laws of the state of New York, with its headquarters located at 185 Marcy Avenue, Suite 304, Brooklyn, New York 11211 and/or 543 Bedford Avenue, Brooklyn, New York, 11211. Upon information and belief, Watermark Capital owns and/or directed, supervised, and/or participated in the design, construction, and/or development of the Subject Properties. Upon information and belief, Watermark Capital has and/or had sufficient control and/or authority to direct, supervise, and/or correct the design and construction

of the Subject Properties and/or to undertake to remedy inaccessible features at the Subject Properties so that the Subject Properties would be accessible to people with disabilities. Upon information and belief, Watermark Capital is one of the related entities comprising the Watermark real estate development brand.

20.    Defendant Watermark Capital Management LLC was founded in 2016 to provide management services to the Watermark Capital Group-owned properties. Its listed address is 543 Bedford Avenue #264, Brooklyn, New York, 11211, the same address as Watermark Developers LLC, WMCM LLC, and One Zero One LLC, and in the same building as 143 Graham LLC, and Barclay USA LLC. On information and belief Defendant Watermark Capital Management LLC owns and/or directed, supervised and/or participated in the design, construction, and/or development of the Subject Properties. Upon information and belief, Watermark Capital Management LLC has and/or had sufficient control and/or authority to direct, supervise, and/or correct the design and construction of the Subject Properties and/or to undertake to remedy inaccessible features at the Subject Properties so that the Subject Properties would be accessible to people with disabilities.

21.    Defendant Watermark Developers LLC has a listed address of 543 Bedford Avenue #264. It shares an address with Watermark Capital Management LLC, WMCM LLC, and One Zero One LLC, and is in the same building as 143 Graham LLC, and Barclay USA LLC. On information and belief Defendant Watermark Developers LLC owns and/or directed, supervised, and/or participated in the design, construction, and/or development of the Subject Properties. Upon information and belief, Watermark Developers LLC has and/or had sufficient control and/or authority to direct, supervise, and/or correct the design and construction of the

Subject Properties and/or to undertake to remedy inaccessible features at the Subject Properties so that the Subject Properties would be accessible to people with disabilities.

22.    Defendant 4th Avenue QOZB LLC is a foreign limited liability company formed under the laws of the state of Delaware, with its headquarters located at 185 Marcy Avenue, Suite 304, Brooklyn, New York 11211, Watermark Capital's address.  It is the owner listed on the deed for 584 Fourth.  Its address on recent public documents is c/o Watermark Capital at 185 Marcy Avenue, Suite 304 Brooklyn, New York 11211.  Upon information and belief, 4th Avenue QOZB LLC is an entity owned by, controlled by, directed by, related to, and/or affiliated with Watermark Capital.  Upon information and belief, 4th Avenue QOZB LLC has and/or had sufficient control and/or authority to direct, supervise, and/or correct the design and construction of 584 Fourth and/or to undertake to remedy inaccessible features at 584 Fourth so that 584 Fourth would be accessible to people with disabilities.

23.    Defendant One Zero One LLC is a domestic limited liability company formed under the laws of New York.  Its headquarters are located at 543 Bedford Avenue, Suite 264, Brooklyn, New York, 11211, the same address as Watermark Capital Management LLC and WMCM LLC, and in the same building as 143 Graham LLC, and Barclay USA LLC.  It is the owner listed on the deed for 44 Kent.  Upon information and belief, One Zero One LLC is an entity owned by, controlled by, directed by, related to, and/or affiliated with Watermark Capital. Upon information and belief, One Zero One LLC has and/or had sufficient control and/or authority to direct, supervise, and/or correct the design and construction of 44 Kent and/or to undertake to remedy inaccessible features at 44 Kent so that 44 Kent would be accessible to people with disabilities.

24.     Defendant 303 Wythe Ave LLC is a domestic limited liability company formed under the laws of New York, with its headquarters at 17 Main Street, #316, Monsey, New York, 10952.  It is the owner listed on the deed for 303 Wythe.  Upon information and belief, Defendant 303 Wythe Ave LLC has and/or had sufficient control and/or authority to direct, supervise, and/or correct the design and construction of 303 Wythe and/or to undertake to remedy inaccessible features at 303 Wythe so that 303 Wythe would be accessible to people with disabilities.

25.     Defendant Chesky Landau a/k/a Chaskel Landau ("C. Landau") is a natural person who upon information and belief resides in Rockland County, New York.  Upon information and belief, Defendant C. Landau was at all relevant times the real owner of 303 Wythe and is closely connected to and/or affiliated with Watermark Capital.  Upon information and belief, C. Landau may be related to Watermark Capital founding partner Wolfe Landau.  As noted above, C. Landau's address on a number of the properties he has purchased is publicly listed as 185 Marcy Avenue, Suite 304, Brooklyn, New York, the listed address for Watermark Capital.

26.     Defendant 1428 Putnam Towers LLC is a domestic limited liability company formed under the laws of New York, with its headquarters located at 199 Lee Avenue #962, Brooklyn, New York 11211, in the same building as B Contractors Group LLC.  It is an owner of 303 Wythe according to public documents.  Upon information and belief, Defendant 1428 Putnam Towers LLC is an entity owned by, controlled by, directed by, related to, and/or affiliated with Watermark Capital, C. Landau, and/or B Contractors Group LLC.

27.     Defendant 143 Graham LLC is a domestic limited liability company formed under the laws of New York, with its headquarters located at 543 Bedford Avenue, Suite 278,

Brooklyn, New York, 11211, in the same building as Watermark Capital Management LLC, WMCM LLC, One Zero One LLC, and Barclay USA LLC.  It is the leaseholder, ground tenant, and developer of 169 Johnson, with a 49-year lease and an option for another 50 years.  Upon information and belief, Defendant 143 Graham LLC is an entity owned by, controlled by, directed by, related to, and/or affiliated with Watermark Capital.  Upon information and belief, Defendant 143 Graham LLC has and/or had sufficient control and/or authority to direct, supervise, and/or correct the design and construction of 169 Johnson and/or to undertake to remedy inaccessible features at 169 Johnson so that 169 Johnson would be accessible to people with disabilities.

28.    Defendant Barclay USA LLC is a domestic limited liability company formed under the laws of New York, with its headquarters located at 543 Bedford Avenue, Brooklyn, New York, 11211, in the same building as Watermark Capital Management LLC, WMCM LLC, One Zero One LLC, and 143 Graham LLC.  It is the leaseholder, ground tenant, and developer of 138-25 Barclay, with a 49-year lease and an option for another 50 years.  Upon information and belief, Defendant Barclay USA LLC is an entity owned by, controlled by, directed by, related to, and/or affiliated with Watermark Capital.  Upon information and belief, Defendant Barclay USA LLC has and/or had sufficient control and/or authority to direct, supervise, and/or correct the design and construction of 138-25 Barclay and/or to undertake to remedy inaccessible features at 138-25 Barclay so that 138-25 Barclay would be accessible to people with disabilities.

29.    Defendant The Loketch Group Inc. is a domestic business corporation formed under the laws of New York, with headquarters at 1834 Coney Island Avenue, Suite 2, Brooklyn, New York 11230.  In media and marketing coverage of 44 Kent, including on its own website, it is listed as the developer for 44 Kent.  Upon information and belief, Defendant The Loketch

Group has and/or had sufficient control and/or authority to direct, supervise, and/or correct the design and construction of 44 Kent and/or to undertake to remedy inaccessible features at 44 Kent so that 44 Kent would be accessible to people with disabilities.

30.    Defendant B Contractors Group LLC is a domestic limited liability company formed under the laws of New York and headquartered at either 199 Lee Avenue 471, Brooklyn, New York 11211 (the same building as 1428 Putnam Towers LLC) and/or 185 Marcy Avenue, Suite 304, Brooklyn NY 11211 (the Watermark Capital address).  It was a contractor for 44 Kent, 584 Fourth, and 303 Wythe.  Upon information and belief, Defendant B Contractors Group LLC has and/or had sufficient control and/or authority to direct, supervise, and/or correct the design and construction of 44 Kent, 584 Fourth, and 303 Wythe and/or to undertake to remedy inaccessible features at 44 Kent, 584 Fourth, and 303 Wythe so that 44 Kent, 584 Fourth, and 303 Wythe would be accessible to people with disabilities.

31.    Defendant WMCM LLC is a domestic limited liability company formed under the laws of New York and headquartered at 543 Bedford Avenue #264, Brooklyn, New York, 11211, the same address as Watermark Capital Management LLC and One Zero One LLC, and in the same building as 143 Graham LLC, and Barclay USA LLC.  It was a contractor for 169 Johnson, 138-25 Barclay, and 44 Kent.  Upon information and belief, Defendant WMCM LLC has and/or had sufficient control and/or authority to direct, supervise, and/or correct the design and construction of 169 Johnson, 138-25 Barclay, and 44 Kent and/or to undertake to remedy inaccessible features at 169 Johnson, 138-25 Barclay, and 44 Kent so that 169 Johnson, 138-25 Barclay, and 44 Kent would be accessible to people with disabilities.

32.    Empire Management & Construction LLC is a domestic limited liability company formed under the laws of New York and headquartered at 266 Broadway, Suite 301, Brooklyn,

New York 11211.  It was a contractor for 44 Kent.  Upon information and belief, Defendant

Empire Management & Construction LLC has and/or had sufficient control and/or authority to

direct, supervise, and/or correct the design and construction of 44 Kent and/or to undertake to

remedy inaccessible features at 44 Kent so that 44 Kent would be accessible to people with

disabilities.

33.     Defendant Yatziv Corp is a domestic business corporation formed under the laws

of New York with its headquarters at 341A Wallabout Street, Brooklyn, New York 11206.  Its

Chief Executive Officer is Yehoshua Wertzberger with an address of 446 Marcy Avenue,

Apartment 4C, Brooklyn, New York 11206.  It was a contractor for 44 Kent.  Upon information

and belief, Defendant Yatziv Corp has and/or had sufficient control and/or authority to direct,

supervise, and/or correct the design and construction of 44 Kent and/or to undertake to remedy

inaccessible features at 44 Kent so that 44 Kent would be accessible to people with disabilities.

34.     Defendant ND Architecture & Design P.C. is a domestic professional service

corporation formed under the laws of New York with its headquarters at 499 Van Brunt Street,

#9B, Brooklyn New York 11231 and/or 2980 Waverly Avenue, Oceanside, New York 11572.  It

was the architect for all of the Subject Properties.  Upon information and belief, Defendant ND

Architecture & Design P.C. has and/or had sufficient control and/or authority to direct, supervise,

and/or correct the design and construction of the Subject Properties and/or to undertake to

remedy inaccessible features at the Subject Properties so that the Subject Properties would be

accessible to people with disabilities.

35.     Each Defendant participated in the design and construction process for one or

more Subject Properties and/or, upon information and belief, was able to exercise sufficient

control and/or authority to undertake to remedy at least one of the Subject Properties or

otherwise to make the Subject Properties accessible to people with disabilities and/or compliant with applicable accessibility laws.  Consequently, each Defendant had an independent, non-delegable duty to comply with the accessibility requirements of the fair housing laws.

## FACTUAL ALLEGATIONS

### Statutory and Regulatory Framework

36.    Congress enacted the Fair Housing Act Amendments ("FHAA") in 1988.  Based on the FHAA's legislative history, it is evident that Congress intended the amendments to reflect the "clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps[1] from the American mainstream."  H.R. Rep. No. 100-711.

37.    Further, Congress aptly described the discriminatory effect created by architectural barriers to entry and use and enjoyment of a dwelling: "A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access into a unit and by too narrow doorways as by a posted sign saying 'No Handicapped People Allowed.'"  *Id.*

38.    Specifically, the FHAA mandates that any multi-family dwelling that consists of four or more dwelling units and is built for first occupancy after March 13, 1991 ("covered dwellings") must provide the following:

   a)  at least one accessible building entrance on an accessible route;

   b)  accessible and usable public- and common-use areas, which include all parts of the building beyond the individual units;

---

[1] Although the FHAA uses the term "handicap" for "disability," both terms carry the same legal meaning. *See Bradgon v. Abbott*, 524 U.S. 624, 631 (1998).  The term "disability" is generally more accepted, and this Complaint uses the two terms interchangeably.

    c) doors designed to allow passage into and within all premises in such dwellings that are sufficiently wide to allow passage by persons using wheelchairs;

    d) an accessible route into and through each dwelling;

    e) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

    f) reinforcements in bathroom walls that allow for the later installation of grab bars; and

    g) usable kitchens and bathrooms such that a person using a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3).

39. To give meaning to the FHAA design and construction requirements, the United States Department of Housing and Urban Development ("HUD") promulgated the final FHAA design and construction regulations in January 1989, which are codified in 24 C.F.R. § 100.205. HUD published the final Fair Housing Accessibility Guidelines on March 6, 1991, 56 Fed. Reg. 9472 ("FHAAG"), which incorporate the requirements of the American National Standard for Buildings and Facilities providing accessibility and usability for people with physical disabilities, A117-1-1986 ("ANSI"), the Fair Housing Act Design Manual in August 1996, which was updated in August 1998, and the Accessibility Requirements for Covered Multifamily Dwellings under the Fair Housing Act in April 2013.

40. With nearly identical language to its federal counterpart, the New York State Human Rights Law prohibits failing to design and construct covered multi-family dwellings in an accessible manner. New York Executive Law, Art. 15 §§ 296(5), (18).

41.     The New York City Human Rights Law likewise prohibits discrimination in housing accommodations.  Section 27-292.8 of the NYC Administrative Code contains the accessibility requirements under the New York City Building Code.  Sections 8-107(5) and (15) characterize the failure to comply with those accessibility requirements as an unlawful deprivation of the full use and enjoyment of a housing accommodation by individuals with disabilities.

**Fair Housing Justice Center**

42.     Since 2005, FHJC has pursued its mission to eliminate housing discrimination, promote open, accessible, and inclusive communities, and strengthen enforcement of fair housing laws in New York City and its surrounding counties.

43.     FHJC's efforts to promote open and inclusive communities include, without limitation:

(a) providing information to the public and other non-profit organizations in the New York region about fair housing laws and the services it provides;

(b) organizing and hosting design and construction webinars and trainings for architects, engineers, developers, and attorneys on accessibility requirements;

(c) providing legal training for attorneys regarding representing plaintiffs and complainants in housing discrimination matters;

(d) conducting intake calls and related communications and activities regarding complaints of discrimination;

(e) providing intake counseling to individuals and organizations with allegations of housing discrimination;

(f) conducting testing and other investigations of allegations of housing discrimination, including for government law enforcement agencies;

(g) making legal referrals to cooperating attorneys;

(h) assisting with the preparation and filing of administrative housing discrimination complaints;

(i) assisting individuals who contact FHJC seeking accommodations or modifications due to disabilities;

(j) providing post-referral litigation support services;

(k) conducting compliance testing and review in connection with settlement agreements;

(l) providing technical assistance to other non-profit organizations involved in fair housing enforcement activities; and

(m) engaging in policy initiatives that promote fair housing, including publishing and disseminating reports and other educational materials.  FHJC provides these and other services free of charge and without regard to income.

44.    Through its multi-faceted work, FHJC has consistently found that developers, landlords, architects, and contractors like the Defendants in this case are not fully complying with the accessibility requirements of federal, state, and local fair housing laws regarding reasonable accommodations, modifications, and new construction.  This lack of compliance has created thousands of inaccessible multi-family dwelling units in New York City, including the Subject Properties, which were designed and constructed by Defendants decades after the requirements of these laws went into effect in 1991.

45.    These ongoing and continuing failures to comply with laws intended to create open, inclusive, and accessible communities consistent with FHJC's mission injure and impair

FHJC's core activities and its ability to accomplish its mission.  For example, when developers, landlords, architects, and contractors such as Defendants design and construct inaccessible housing, the supply of accessible and adaptable housing is limited within the area that FHJC serves.

46.     Among other problems, individuals living in inaccessible units built before 1991 have fewer options to move to newly constructed dwellings, because so many of those dwellings are likewise inaccessible.  Such individuals thus have a greater need for modifications to the buildings in which they currently live.

47.     FHJC operates the Adele Friedman Housing Accessibility Fund (the "Fund") to provide targeted financial assistance to low- and moderate-income renters with physical disabilities within FHJC's service area who need reasonable modifications to existing housing to make it accessible for them.  FHJC established the Fund in part because design and construction developers and professionals continue to design and construct inaccessible housing in New York City in violation of fair housing laws.

48.     FHJC employs staff to assist renters with physical disabilities within its service areas to make reasonable accommodation and modification requests to their landlords, condominium, and cooperative boards, and/or in other multi-family housing, to improve the accessibility of their housing on a case-by-case basis (notwithstanding that fair housing laws require new housing construction to meet minimum accessibility criteria precisely to avoid needing to modify buildings on a case-by-case basis).  FHJC staff review each individual's eligibility for reasonable accommodations and/or modifications through an intake counseling process; help individuals obtain medical support, if needed, for their requests; assist in drafting

and making requests; and oversee the implementation of approved requests, including inspecting retrofits after they are implemented to ensure that the individual's needs are met.

49.     FHJC also recruits and compensates architects to evaluate an individual's dwelling, propose necessary modifications, and provide a written proposal for the proposed modifications for the landlord or board.  In situations where a landlord or condominium or co-op board is not required by law to pay for the modifications and the residents are moderate or low-income, FHJC pays for the modifications through the Fund.  FHJC staff additionally engage in outreach to nonprofit organizations with clients with disabilities to inform them of their rights and opportunities to request and obtain necessary modifications to inaccessible dwellings, including with FHJC's assistance.

50.     If developers, landlords, architects, contractors, and engineers, including Defendants, simply complied with the accessibility requirements of fair housing laws as they are required to do, the need for all the above services would be reduced and FHJC's ability to accomplish its mission of creating accessible communities would not be thwarted.

51.     When investigating the accessibility of housing accommodations, FHJC dispatches individuals as "testers," persons posing as renters or homebuyers without an intent to rent or buy.  FHJC testers obtain information about the conduct of landlords, real estate agents, rental management companies, housing developers, agents, and others to determine whether illegal housing discrimination is taking place.  In cases such as this one, FHJC sends testers to newly constructed multi-family residential buildings to inquire about the availability of housing for rent for themselves or family members.  The testers obtain information about the dwellings, including by taking measurements of particular components of the common areas and individual residential units.

52.    Before participating in a testing investigation coordinated by FHJC, the testers receive training from FHJC regarding, among other things, taking measurements, preparing tester report forms, and using concealed digital audio recorders during the tests.

53.    FHJC expended staff time, expenses, and other valuable resources to investigate, respond to, counter, and stop Defendants' illegal and discriminatory housing policies and practices.  FHJC expects to incur future economic costs in the form of staff time and other resources to ensure that Defendants do not continue to violate fair housing laws, and to repair and redress the harm caused to the communities that FHJC serves.  FHJC's response to Defendants' discrimination has diverted resources from other FHJC activities, like the ones listed above.

54.    All calls made by and all visits by FHJC's testers were recorded.

**Inaccessible Features at 584 Fourth Avenue Violate Fair Housing Laws**

55.    As noted above, 584 Fourth is a 9-story, 46-unit mixed-use building located in Gowanus, Brooklyn, built in 2023.  Its final certificate of occupancy was issued on April 23, 2024.  All of the residential apartments at 584 Fourth are covered dwellings, as defined by applicable fair housing laws.

56.    Among other amenities, 584 Fourth offers various common spaces, including a fitness center and a roof deck featuring barbeque grills and seating areas.  The building, including the individual units and the common areas, is or was owned, managed, designed, and/or constructed by various defendants and related entities including Watermark Capital Group LLC, 4th Avenue QOZB LLC, B Contractors Group LLC, and ND Architecture & Design P.C.

57.    On August 22, 2023, FHJC dispatched two testers, posing as husband and wife, to view one-bedroom and two-bedroom apartments at 584 Fourth.  With a Nooklyn Realty leasing

agent, they viewed apartments 201, 202, 504, and 706.  The testers presented themselves as looking for an apartment on behalf of a relative with disabilities who uses a wheelchair.

58.    The testers observed the following barriers to accessibility during their visit to 584 Fourth:

    a)  The lobby entrance had an inaccessible threshold;

    b)  The entrance to the roof deck had an inaccessible threshold;

    c)  Mailboxes in the mailroom were inaccessible because they were too high;

    d)  A hallway within one unit was inaccessible because it was too narrow;

    e)  The galley kitchen in one unit had insufficient clear maneuvering floor space;

    f)  Bathroom thresholds in all four units the testers viewed were inaccessible;

    g)  Environmental controls were inaccessible because they were too high in all four units the testers viewed.

59.    Additionally, the leasing agent told the testers that he was not sure that the walls were reinforced such that grab bars could be installed, though he indicated that tenants could come to an understanding about installing grab bars if needed during the application process.

60.    Upon information and belief, a full inspection of 584 Fourth will reveal other barriers to access.

61.    As required by the FHAA, Plaintiff requires a full inspection of 584 Fourth in order to document and seek remedies for areas of non-compliance not identified in this Complaint.  Plaintiff intends to amend this Complaint to include any violations of fair housing laws identified during an inspection that are not reflected herein.

**Inaccessible Features at 169 Johnson Avenue Violate Fair Housing Laws**

62.     169 Johnson Avenue ("169 Johnson") is a 7-story, 52-unit rental building located in Williamsburg, Brooklyn, built in 2022.  All of the residential apartments in 169 Johnson are covered dwelling units, as defined by applicable fair housing laws.  Its final certificate of occupancy was issued on May 8, 2023.

63.     Among other amenities, 169 Johnson has a fully furnished rooftop, business center, and fitness center.

64.     The building, including the individual units and the common areas, is or was owned, managed, designed, and/or constructed by various defendants and related entities including Watermark Capital Group LLC, 143 Graham LLC, WMCM LLC, and ND Architecture & Design, P.C.

65.     On March 6, 2024, FHJC dispatched two testers posing as an uncle and nephew, looking for an apartment on behalf of another relative with disabilities who uses a wheelchair. They met with a Nooklyn licensed real estate agent and viewed a single, occupied unit at the building, apartment #504.

66.     The testers observed the following inaccessible features:

  a.  Mailboxes in the mailroom were inaccessible because they were too high;

  b.  The kitchen had insufficient clear floor maneuvering space;

  c.  Door openings within the unit were inaccessible because they were too narrow:

  d.  Hallways within the unit were inaccessible because they were too narrow; and

  e.  Environmental controls were located at inaccessible locations throughout the unit.

67.    Additionally, the leasing agent told the testers that he was not sure that the walls were reinforced such that grab bars could be installed, and that if it were possible, the cost to do so "would probably be on the tenant."

68.    Upon information and belief, a full inspection of 169 Johnson will reveal other barriers to access.

69.    As required by the FHAA, Plaintiff requires a full inspection of 169 Johnson in order to document and seek remedies for areas of non-compliance not identified in this Complaint.  Plaintiff intends to amend this Complaint to include any violations of fair housing laws identified during an inspection that are not reflected herein.

**Inaccessible Features at 138-25 Barclay Avenue Violate Fair Housing Laws**

70.    138-25 Barclay, also known as the Haru, is a 7-story, 48-unit building located in Flushing, Queens, built in 2023.  Its final certificate of occupancy was issued on July 9, 2024. All of the residential apartments in 138-25 Barclay are covered dwelling units, as defined by applicable fair housing laws.

71.    Amenities include common areas such as a lounge, shared roof deck, business center, and a gym.

72.    The building, including the individual units and the common areas, is or was owned, managed, designed, and/or constructed by various defendants and related entities including Watermark Capital Group LLC, Barclay USA LLC, WMCM LLC, and ND Architecture & Design, P.C.

73.    On December 21, 2023, FHJC dispatched two testers posing as a couple looking for an apartment for the male testers' parents, one of whom has physical disabilities and uses a wheelchair.  They met with a Nooklyn licensed real estate salesperson and viewed seven units in

the building: 301, 302, 303, 304, 305, 306, and 307.  The testers observed the following

inaccessible features:

> a.   Mailboxes in the mailroom were inaccessible because they were too high;
>
> b.   The entrance door to the building was heavy and hard to open (no apparent doorman);
>
> c.   Entrance thresholds in all units were inaccessible;
>
> d.   Entrance door openings in two units were inaccessible because they were too narrow;
>
> e.   Kitchens in three of the units had insufficient clear floor maneuvering space;
>
> f.   The hallway within one unit was inaccessible because it was too narrow;
>
> g.   Environmental controls throughout the units were located at inaccessible locations;
>
> h.   Passage to the balcony in one unit was inaccessible; and
>
> i.   There was inadequate clearance at the roll-in showers in at least two units.

74.     Upon information and belief, a full inspection of 138-25 Barclay will reveal other

barriers to access.

75.     As required by the FHAA, Plaintiff requires a full inspection of 138-25 Barclay in

order to document and seek remedies for areas of non-compliance not identified in this

Complaint.  Plaintiff intends to amend this Complaint to include any violations of fair housing

laws identified during an inspection that are not reflected herein.

**Inaccessible Features at 44 Kent Street Violate Fair Housing Laws**

76.     44 Kent is a five-story, 42-unit mixed-use building located in Greenpoint,

Brooklyn.  It was built and opened for first occupancy in 2017 and a final certificate of

occupancy was issued on December 8, 2017.  All of the residential apartments in 44 Kent are

covered dwelling units, as defined by applicable fair housing laws.

24

77.     Among other amenities, 44 Kent offers a finished rooftop, a fitness center, bike storage, a business center, and parking.

78.     The building, including the individual units and the common areas, is or was owned, managed, designed, and/or constructed by various defendants and related entities including Watermark Capital Group LLC, The Loketch Group Inc., One Zero One LLC, Empire Management & Construction LLC, Yatziv Corp, WMCM LLC, B Contractors Group LLC, and ND Architecture & Design P.C.

79.     On July 31, 2023, FHJC dispatched two testers posing as friends to view a two-bedroom apartment in 44 Kent.  The testers stated that they were looking for an apartment on behalf of one tester's cousins, one of whom has physical disabilities and uses a wheelchair.

80.     The testers met with a Nooklyn real estate salesperson to view apartment 311 at an open house.

81.     The testers observed the following inaccessible features:

    a.   The entrance ramp had inadequate clearance and a handrail on only one side;

    b.   Mailboxes were inaccessible because they were too high;

    c.   Entrance to the common laundry area was inaccessible because it was too narrow;

    d.   The entrance to the roof deck had an inaccessible threshold;

    e.   There were no assigned accessible parking spots; and

    f.   At least one of the environmental controls in the unit was located at an inaccessible location.

82.     Additionally, the leasing agent told the testers that he was not sure that the walls were reinforced such that grab bars could be installed.

83.    Upon information and belief, a full inspection of 44 Kent will reveal other barriers to access.

84.    As required by the FHAA, Plaintiff requires a full inspection of 44 Kent in order to document and seek remedies for areas of non-compliance not identified in this Complaint. Plaintiff intends to amend this Complaint to include any violations of fair housing laws identified during an inspection that are not reflected herein.  Furthermore, to the extent the inspection reveals that the 44 Kent parking garage is available to the public, Plaintiff reserves the right to amend the Complaint to allege violations of the Americans with Disabilities Act.

**Inaccessible Features at 303 Wythe Avenue Violate Fair Housing Laws**

85.    303 Wythe is a 4-story, 22-unit rental building located in Williamsburg, Brooklyn. It was built in 2024 and rentals were first listed online in or about March 2024.  As noted above, no certificate of occupancy appears to be publicly available for the newly constructed building. All of the residential apartments in 303 Wythe are covered dwelling units, as defined by applicable fair housing laws.

86.    Among other amenities, 303 Wythe offers a finished shared rooftop, patio, garden, a fitness center, bike storage, a media room, and parking.

87.    The building, including the individual units and the common areas, is or was owned, managed, designed, and/or constructed by various defendants and related entities including 303 Wythe Ave LLC, C. Landau, 1428 Putnam Towers LLC, B Contractors Group LLC, and ND Architecture & Design P.C.

88.    On April 11, 2024, FHJC dispatched two testers posing as sisters to view available three-bedroom apartments in the building on behalf of a relative with disabilities who uses a wheelchair.

89.     They met with a Nooklyn real estate salesperson and viewed apartments 404 and 405.

90.     Although "wheelchair access" is listed as an amenity on the listings, the two testers discovered the following inaccessible features:

      a.  Mailboxes in the mailroom were inaccessible because they were too high;

      b.  All bedroom door openings were inaccessibly narrow in both units;

      c.  Environmental controls were located in inaccessible locations throughout the units;

91.     Additionally, the leasing agent told the testers that she was not sure that the walls were reinforced such that grab bars could be installed, indicating that the tenant might be able to put them in but "I don't think the building's going to put them in."

92.     Upon information and belief, a full inspection of 303 Wythe will reveal other barriers to access.

93.     As required by the FHAA, Plaintiff requires a full inspection of 303 Wythe in order to document and seek remedies for areas of non-compliance not identified in this Complaint.  Plaintiff intends to amend this Complaint to include any violations of fair housing laws identified during an inspection that are not reflected herein.

**The Defendants' Ongoing Pattern and Practice of Unlawful Design and Construction of Residential Housing**

94.     The inaccessible features are similar across the Subject Properties, including inaccessible mailboxes and environmental controls at each of the buildings, and consistently inaccessible thresholds and clearances.  That these Subject Properties all developed within a few years of each other have many of the same barriers to access indicates that Defendants, their related entities, and the design and construction professionals engaged to build the Subject

Properties, have a regular practice of designing and constructing multi-family residential

dwellings in the city and state of New York that do not comply with the accessibility

requirements of the Fair Housing Act, the New York State Human Rights Law, or the New York

City Human Rights Law.

95.    Watermark Capital Group alone owns at least 121 commercial properties with

1,448 residential units as of March 5, 2024,[2] and continues to rapidly buy new properties for

development.[3]  ND Architecture and Design has worked on at least 49 buildings in New York

City.[4]  Upon information and belief, Defendants' continued development of buildings within

FHJC's geographical reach raises a concern that current and future projects will not comply with

the accessibility requirements of federal, state, and local fair housing laws.

**Injury to FHJC**

96.    As a direct result of their illegal and discriminatory actions described above,

Defendants have injured FHJC by frustrating its mission of creating open and inclusive

communities free of discrimination.

97.    Defendants' illegal and discriminatory actions perpetuate unequal housing

opportunities in New York City and the surrounding areas and frustrate FHJC's mission by

creating inaccessible housing in the buildings that Defendants have developed, designed and/or

---

[2] Pincus Co, *Watermark Capital signs $15M contract to buy church dev site in Fort Greene Historic District*, March 5, 2024. Available at: https://www.pincusco.com/watermark-capital-signs-15m-contract-to-buy-church-dev-site-in-fort-greene-historic-district/#:~:text=Watermark%20Capital%20Group%20has%20been,Cypress%20Hills%2C%20also%20in%202023 (last visited February 14, 2025).
[3] *Wolfe Landau's Watermark Has a Thing for Abandoned Churches*, THE REAL DEAL, August 16, 2024. Available at: https://therealdeal.com/new-york/2024/08/16/watermark-eyes-third-church-property-for-redevelopment-in-under-a-year/ (last visited February 14, 2025) (noting that the developer paid to demolish three churches within the past year to develop apartments in their place).
[4] *See* ND Architecture & Design website, https://www.ndarchdesign.com/residential-new (last visited February 14, 2025).

constructed, thus limiting the supply of accessible and adaptable housing within FHJC's service area.

98.    Defendants have separately injured FHJC by causing FHJC to divert its scarce resources toward investigating, identifying, and counteracting Defendants' discriminatory housing practices.  These resources otherwise would have been used to engage in other activities and provide other services as described in Paragraphs 42 through 53 *supra*, including *inter alia*, providing information to the public and other non-profit organizations, providing intake counseling services to individuals and organizations, providing post-referral litigation support services, and engaging in policy and education initiatives to promote fair housing.  Moreover, Defendants have contributed to the depletion of the Fund by failing to comply with the accessibility requirements of the fair housing laws in their design and construction of the Subject Properties and their other buildings, thereby creating more inaccessible housing stock in the New York City area and increasing the need for modifications to such housing.

99.    Given Watermark Capital and its affiliates' extensive size and rapid expansion, FHJC is likely to be injured by Defendants' future design and construction of additional multi-family residential properties as defined by 42 U.S.C. § 3602(i).  Unless Defendants' violations are remedied, their illegal and discriminatory actions will continue to injure FHJC by, *inter alia*:

a.    Interfering with fair housing programs and services;

b.    Requiring FHJC to use its scarce resources, including funding and staff time, to focus on investigating and countering Defendants' illegal and discriminatory conduct, thus diverting those resources from other activities including educational, outreach, and counseling services; and

c.    Frustrating FHJC's organizational mission and goals of promoting equally available and accessible housing to all persons without regard to disability.

**FIRST CAUSE OF ACTION**
**(Federal Fair Housing Act – 42 U.S.C. § 3601 et seq.)**

100.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

101.    Plaintiff is an aggrieved person as defined in 42 U.S.C. §§ 3602(d) and (i), has been injured by Defendants' discriminatory conduct, and has suffered damages as a result.

102.    The residential apartments at the Subject Properties, 584 Fourth, 169 Johnson, 138-25 Barclay, 44 Kent, and 303 Wythe, are "covered multi-family dwellings" as defined by 42 U.S.C. § 3604(f)(7).

103.    Each of the Defendants participated in the design and/or construction of the covered multi-family dwellings and common use areas at the Subject Properties in violation of 42 U.S.C. § 3604(f)(3)(C).

104.    As a result of Defendants' failure to design and construct the above-identified covered multi-family dwellings in compliance with the accessibility requirements of the Fair Housing Act, Defendants have denied and continue to deny housing to disabled individuals.

105.    As a direct and proximate result of Defendants' ongoing denial of available housing to individuals with disabilities, Plaintiff has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

106.    As a direct and proximate result of Defendants' failure to design and construct in compliance with the accessibility requirements of the Fair Housing Act, inaccessible dwellings have been and will be constructed in Kings and Queens Counties that reduce housing opportunities for disabled individuals.

107.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

108.    Defendants engaged in at least one discriminatory act within the last two years, as required by 42 U.S.C. § 3613(a)(1)(A), in that the testers experienced the violations at 584 Fourth on August 22, 2023, at 169 Johnson on March 6, 2024, at 138-25 Barclay on December 21, 2023, at 44 Kent on July 31, 2023, and at 303 Wythe on April 11, 2024.

109.    Defendants engaged in at least one discriminatory act within the last two years, as required by 42 U.S.C. § 3613(a)(1)(A), in that 584 Fourth Avenue opened for occupancy on or around April 23, 2024, 169 Johnson was opened for occupancy on or around May 8, 2023, 138-25 Barclay was opened for occupancy on or around July 9, 2024, and 303 Wythe began listing rental units in March of 2024.

110.    Accordingly, pursuant to 42 U.S.C. §§ 3613(a) and (c), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (New York State Human Rights Law – N.Y. Exec. Law § 290 et seq.)

111.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

112.    Plaintiff is a person as defined by Executive Law § 292(1).

113.    The Subject Properties are "housing accommodations" as defined by Executive Law § 292(10).

114.    Defendants have designed and constructed the above-identified housing accommodations in violation of the accessibility requirements found in the Executive Law § 296(18)(3) and the New York State Fire Prevention and Building Code.

115.    Defendants' conduct as set forth above constitutes an unlawful discriminatory practice that discriminates in the furnishing of housing accommodations in violation of the

31

accessibility requirements found in Executive Law § 296(18)(3) and the New York State Uniform Fire Prevention and Building Code.

116.    Defendants' conduct as set forth above constitutes aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by New York Executive Law § 296(5), in violation of New York Executive Law § 296(6).

117.    As a direct and proximate result of Defendants' ongoing denial of available housing to individuals with disabilities, Plaintiff has been injured and continues to suffer damages, including diversion of resources and frustration of mission.

118.    Defendants engaged in at least one discriminatory act within the last three years, as required by N.Y. Exec. Law § 297(5), in that the testers experienced the violations at 584 Fourth on August 23, 2023, at 169 Johnson on March 6, 2024, at 138-25 Barclay on December 21, 2023, at 44 Kent on July 21, 2023, and at 303 Wythe on April 11, 2024.

119.    Defendants engaged in at least one discriminatory act within the last three years, as required by N.Y. Exec. Law § 297(5), in that 584 Fourth Avenue opened for occupancy on or around April 23, 2024, 169 Johnson was opened for occupancy on or around May 8, 2023, 138-25 Barclay was opened for occupancy on or around July 9, 2024, and 303 Wythe began listing rental units in March and April of 2024.

120.    Defendants' failure to design and construct lawfully was intentional, willful, or made in reckless disregard for the rights of others.

121.    Accordingly, pursuant to Article 15 of New York Executive Law § 297, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(New York City Human Rights Law – Administrative Code § 8-107 *et seq.*)**

122.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

123.    Plaintiff is a person as defined by Administrative Code § 8-102(1).

124.    The Subject Properties are "housing accommodations" as defined by Administrative Code § 8-102(10).

125.    Defendants have designed and constructed the above-identified housing accommodations in violation of the accessibility requirements found in Administrative Code § 27-292.8.

126.    Defendants' conduct constitutes the unlawful denial and/or withholding of housing accommodations from people with disabilities in violation of Administrative Code § 8-107(5)(a)(1)(a).

127.    Defendants' conduct constitutes the discriminatory furnishing of facilities or services in connection with housing accommodations on the basis of disability in violation of Administrative Code § 8-107(5)(a)(1)(b).

128.    Defendants' conduct as set forth above constitutes aiding, abetting, inciting, compelling or coercing the doing of any of the acts forbidden by the New York City Human Rights law, or the attempt to do so, in violation of Administrative Code § 8-107(6).

129.    As a direct and proximate result of Defendants' failure to design and construct in compliance with the accessibility requirements of the New York City Human Rights Law, Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages as a result, including diversion of resources and frustration of its mission.

130.    Accordingly, pursuant to Administrative Code § 8-502, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

131.    Defendants engaged in at least one discriminatory act within the last three years as required by the NYCHRL, in that the testers experienced the violations at 584 Fourth on August 23, 2023, at 169 Johnson on March 6, 2024, at 138-25 Barclay on December 21, 2023, at 44 Kent on July 21, 2023, and at 303 Wythe on April 11, 2024.

132.    Defendants engaged in at least one discriminatory act within the last three years, as required by the NYCHRL, in that 584 Fourth Avenue opened for occupancy on or around April 23, 2024, 169 Johnson was opened for occupancy on or around May 8, 2023, 138-25 Barclay was opened for occupancy on or around July 9, 2024, and 303 Wythe began listing rental units in March and April of 2024.

133.    Defendants' failure to design and construct was intentional, willful, or made with reckless disregard for the rights of others.

134.    Plaintiff will cause to be served a copy of this Complaint upon the City Commission on Human Rights and Corporation Counsel, pursuant to Administrative Code § 8-502(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a.    An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*, the New York State Human Rights Law, New York Executive Law § 290 *et seq.*, and the New York City Human Rights Law, Administrative Code § 8-107 *et. seq.*;

b.      An order and judgment enjoining Defendants and Defendants' agents, employees, and successors, and all other persons in active concert or participation from:

(i)      Discriminating against persons with disabilities in the design and/or construction of all covered multi-family residential properties; and

(ii)     aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable fair housing laws;

c.      An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation to:

(i)      Make or pay for all necessary retrofitting in the multi-family dwellings and common areas of the Subject Properties;

(ii)     Make all necessary modifications to the design and construction of multi-family covered dwellings currently planned for construction or under constructions in New York City;

(iii)    Make or pay for all necessary modifications to their policies, practices, and procedures of designing and constructing multi-family residential buildings to conform and comply with applicable fair housing laws;

(iv)    Train all management, agents, and employees on applicable fair housing laws including without limitation specific training of principals, developers, and construction management teams about accessibility requirements;

(v)     Allow for monitoring of future design and construction of covered multi-family residential properties;

(vi)     Allow for periodic monitoring of the Subject Properties and covered
multi-family dwellings and public accommodations to ensure compliance,
including by retaining records sufficient to permit effective monitoring;
and

(vii)    develop a written housing policy to be distributed to all employees and
agents, including without limitation specific policy language targeting
principals, developers, and construction management teams about
accessibility requirements.

d.       An order and judgment awarding monetary damages to Plaintiff FHJC to
compensate it fully for the economic losses, diversion of resources, and interference with the
fulfillment of its mission caused by Defendants' unlawful discriminatory practices;

e.       An order and judgment awarding punitive damages;

f.       An order and judgment awarding Plaintiff attorneys' fees, costs, interest, and
expenses incurred in prosecuting this action;

g.       Pre- and post-judgment interest on any and all such awards; and

h.       Any further relief that may be just and proper.

Dated: New York, New York
      February 14, 2025

By: _____
     Alice Reiter
     Heather Gregorio
     Mariann Meier Wang

Wang Hecker LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2600
areiter@wanghecker.com
hgregorio@wanghecker.com
mwang@wanghecker.com

*Attorneys for Plaintiff Fair Housing Justice Center, Inc.*