UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

FAIR HOUSING JUSTICE CENTER, INC.,

Plaintiff,

v.

WATERMARK CAPITAL GROUP LLC, WATERMARK CAPITAL MANAGEMENT LLC, 4TH AVENUE QOZB LLC, ONE ZERO ONE LLC, 303 WYTHE AVE LLC, CHESKY LANDAU A/K/A CHASKEL LANDAU, 1428 PUTNAM TOWERS LLC, 143 GRAHAM LLC, BARCLAY USA LLC, THE LOKETCH GROUP INC., B CONTRACTORS GROUP LLC, WMCM LLC, EMPIRE MANAGEMENT & CONSTRUCTION LLC, YATZIV CORP, ND ARCHITECTURE & DESIGN P.C.,

Defendants.
-----------------------------------------------------------------X

Index No. 25 Civ. 874 (HG)(JAM)

**CONSENT DECREE**

This Consent Decree (the "Agreement") is entered into by, between, and among, on the one hand, Fair Housing Justice Center, Inc. ("FHJC"), and on the other hand, the Baker Donelson Represented Defendants ("BD Defendants," as defined below) and ND Architecture & Design P.C. ("ND Architecture") (collectively, the "Parties").

**WHEREAS**, on or about February 14, 2025, FHJC filed a Complaint alleging that Defendants (as defined below) discriminated on the basis of disability in the design and construction of five multi-family residential developments in New York City in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*., the New York State Human Rights Law, New York Executive Law § 296 *et seq*., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.*;

**WHEREAS**, Defendants deny the allegations of wrongdoing and liability against them in the Complaint, and by entering into this Agreement do not intend to admit, and do not admit, the same; and

**WHEREAS**, Defendants maintain they have complied and will continue to comply with the Fair Housing Act, 42 U.S.C. § 3601 *et seq*., the New York State Human Rights Law, New York Executive Law § 296 *et seq*., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq*.; and

**WHEREAS**, FHJC and Defendants desire to voluntarily resolve the claims asserted in this action, and agree that the terms of this Agreement, as a compromise to avoid protracted expenses and litigation, reflect a full and fair resolution of the disputes between the Parties; and

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, and ORDERED**, by, between, and among the Parties, and by the Court, that all claims will be compromised, settled, released, and dismissed upon and subject to the terms of this Agreement, as follows:

## SECTION I: DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

1. "Plaintiff" shall mean and refer to the Fair Housing Justice Center, Inc.

2. "BD Defendants" shall mean and refer to Watermark Capital Group LLC, Watermark Capital Management LLC, Chesky Landau a/k/a Chaskel Landau, Empire Management & Construction LLC, The Loketch Group Inc., B Contractors Group LLC, 4th Avenue QOZB LLC, One Zero One LLC, 303 Wythe Ave LLC, 1428 Putnam Towers LLC, 143

Graham LLC, Barclay USA, LLC, WMCM LLC, Empire Management & Construction LLC, and Yatziv Corp, collectively.[1]

3. "ND Architecture" shall mean and refer to ND Architecture & Design P.C.

4. "Defendants" shall mean and refer to the BD Defendants and ND Architecture, collectively.

5. "Action" shall mean and refer to *Fair Housing Justice Center, Inc. v. Watermark Capital Group, et al.*, No. 25-CV-874 (HG)(JAM), pending in the United States District Court for the Eastern District of New York.

6. "Complaint" means the complaint filed in this action on February 14, 2025.

7. "584 Fourth" shall mean and refer to the 46-unit residential apartment building located at 584 Fourth Avenue, Brooklyn, New York, including all individual dwelling units and all common areas.

8. "169 Johnson" shall mean and refer to the 52-unit residential apartment building located at 169 Johnson Avenue, Brooklyn, New York, including all individual dwelling units and all common areas.

9. "138-52 Barclay" shall mean and refer to the 48-unit residential apartment building located at 138-52 Barclay Avenue, Queens, New York, including all individual dwelling units and all common areas.

10. "44 Kent" shall mean and refer to the 48-unit residential apartment building located at 44 Kent Street, Brooklyn, New York, including all individual dwelling units and all common areas.

[1] Named Defendant Watermark Developers LLC was dismissed by court order on August 22, 2025.

11. "303 Wythe" shall mean and refer to the 22-unit residential apartment building located at 303 Wythe Avenue, Brooklyn, New York, including all individual dwelling units and all common areas.

12. "Covered Multifamily Dwellings" means (a) all units in buildings consisting of four or more units if such buildings have at least one elevator, and (b) ground floor units in buildings consisting of four or more units if such buildings do not have an elevator.

13. "BD Covered Sites" shall mean and refer to: (1) 584 Fourth, 169 Johnson, 138-25 Barclay, 44 Kent, and 303 Wythe, which are collectively referred to herein as "Subject Properties;" and (2) all residential developments within the FHJC Service Area (defined below) with Covered Multifamily Dwellings which any of the BD Defendants owns or develops during the term of this Agreement, provided initial occupancy of any Covered Multifamily Dwelling occurs on or after the Effective Date of this Agreement, and a building permit for the residential development was filed during the Term or within the one year prior to the Effective Date.

14. "ND Covered Sites" shall mean and refer to: (1) the Subject Properties; and (2) all residential developments with Covered Multifamily Dwellings to which ND Architecture provides its professional services during the term of this Agreement, where initial occupancy of any Covered Multifamily Dwelling occurs on or after the Effective Date of this Agreement.

15. The "Court" shall mean and refer to United States District Judge Hector Gonzalez of the United States District Court for the Eastern District of New York or any successor judge that the Court may appoint.

16. "FHJC's Service Area" shall mean and refer to New York City and Nassau, Suffolk, Westchester, Dutchess, Orange, Putnam, and Rockland Counties.

## SECTION II: TERM AND SCOPE

17. All obligations under this Agreement, unless otherwise specified, shall commence the day following the date this Agreement is so-ordered by the Court ("Effective Date"). The term of this Agreement is four (4) years from the Effective Date ("Term"), except where stated otherwise.

18. With one exception, all obligations under this Agreement begin on the Effective date and shall remain in effect for the Term. The exception is that the provisions of Section IV below, requiring retrofitting and notice to current and prospective residents of available retrofits, shall remain in force in perpetuity until all of the retrofits available on request have been completed in each applicable unit.

19. Unless otherwise specified, this Agreement will be binding on the Defendants and all their employees, agents, representatives, officers, heirs, assigns, subsidiaries, or successors in interest.

## SECTION III: MONETARY RELIEF

20. Defendants shall collectively pay FHJC the total sum of One Million Three Hundred Fifty Thousand Dollars ($1,350,000.00) (the "Settlement Amount") in full and complete satisfaction of all claims for monetary damages in the Action and all claims for attorneys' fees and costs incurred by FHJC through and including the Effective Date. The Settlement Amount shall be paid as follows:

a. ND Architecture will pay a total of Five Hundred Thousand Dollars ($500,000.00) within thirty (30) days of the date this Agreement is so-ordered by the Court ("Effective Date") in full and final settlement of all claims.

b. "Paying Defendants" shall collectively mean 4th Avenue QOZB LLC, One Zero One LLC, 303 Wythe Ave LLC, 143 Graham LLC, and Barclay USA LLC. The Paying Defendants will jointly pay a total of Eight Hundred Fifty Thousand Dollars ($850,000.00) in full and final settlement of all claims, to be paid in the following installments and in the following amounts:

   i. Two Hundred Fifty Thousand Dollars ($250,000.00) within thirty (30) days of the Effective Date, to be paid Fifty Thousand Dollars ($50,000.00) from each of the five Paying Defendants ;

   ii. Six Hundred Thousand Dollars ($600,000.00) to be paid in six monthly installments, each one in the amount of One Hundred Thousand Dollars ($100,000.00), with the first installment due within sixty (60) days of the Effective Date, and each successive payment due thirty (30) days thereafter, including the payment due within seven (7) months of the Effective Date; each of the foregoing installments is to be paid Twenty Thousand Dollars ($20,000.00) from each of the Paying Defendants in each installment.

c. All payments pursuant to the Settlement Amount shall be paid by wire transfer to the attorney IOLTA account of FHJC's counsel.

21. Concurrently with the execution of this Agreement, counsel for Plaintiff, Wang Hecker LLP, will furnish Defendants with the wire instructions for the payment of the Settlement

Amount and the appropriate and fully executed IRS Form W-9 for its attorney IOLTA account to receive the Settlement Amount payments.

## SECTION IV: PROVISIONS RELATING TO RETROFITS OF THE SUBJECT PROPERTIES

22. The Parties agree that the Settlement Amount described in Section III does not include the cost of retrofits of the individual dwelling units and common use areas of the Subject Properties. The Parties further agree that the BD Defendants shall bear the costs of all individual dwelling unit and common use area retrofits specified in this Agreement.

23. The retrofit plans for the Subject Properties are contained in Exhibit A and are hereby incorporated into and made enforceable as part of this Agreement.

24. The BD Defendants represent that they have full authority to make all retrofits set forth in Exhibit A and required pursuant to this Agreement.

25. Within one hundred and eighty (180) days of the Effective Date (the “Common Use Area Retrofit Period”), the BD Defendants shall complete all agreed-upon retrofits of the common use areas at the Subject Properties, as set forth in Exhibit A hereto.

26. Within fourteen (14) days of the Effective Date, the BD Defendants shall provide Plaintiff with a complete and accurate list of all of the dwelling units at each Subject Property that were not occupied by residents or other occupants as of the Effective Date (“Unoccupied Units”) and represent and warrant that such list shall be complete and accurate. FHJC shall maintain the confidentiality of such list at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement.

27. Within fourteen (14) days of the Effective Date, the BD Defendants shall provide Plaintiff with a complete and accurate list of all of the dwelling units at each Subject Property

that were occupied by a resident or other occupant as of the Effective Date ("Occupied Units") and represent and warrant that such list shall be complete and accurate. FHJC shall maintain the confidentiality of such list at all times except with respect to its attorneys and experts and except in connection with any action, proceeding, or motion to enforce this Agreement.

28. The BD Defendants shall complete all retrofits in Occupied Units that do not require a resident request pursuant to Exhibit A ("Required Retrofits") by the earlier of (1) the request of a resident; (2) the turnover of the unit; or (3) two years after the Effective Date (the "Required Retrofit Period"), as set forth in Exhibit A. The BD Defendants shall complete all Required Retrofits in each Unoccupied Unit before making such unit available for rent, and by no later than the expiration of the Required Retrofit Period.

29. Within thirty (30) days of the Effective Date, the BD Defendants shall notify current residents of the Subject Properties of retrofits available for them to request at no cost to them by providing residents with a copy of the Notice of Current Residents of Accessibility Features Available on Request." This notice shall be substantially in the form of Exhibits B-1 through B-5.

30. Within thirty (30) days of the Effective Date, and continuing until all available retrofits have been made, the BD Defendants shall cause to be delivered a notice for prospective residents of the Subject Properties, detailing accessibility retrofits available for individual units at the request of a resident at no cost to that resident. The notice shall be delivered to the brokerage handling the available apartment with instruction that it is to be provided to any prospective resident when such person first inquires about an available apartment at one of the Subject Properties. The notice will also be attached to the final executed lease. The "on request" retrofit need not be made until the prospective resident making the request has signed a lease

agreement. The lease agreement shall acknowledge that the resident was notified of the availability of accessibility retrofits upon the request of the resident and at no cost to such resident. The notice shall be substantially in the form of Exhibits C-1 through C-5 ("Notice to Prospective Residents of Accessibility Features Available Upon Request").

31. The BD Defendants shall maintain and retain records of all such notice distributions described in Paragraphs 29 and 30, but need not share such records with Plaintiff except in the event of a proceeding by Plaintiff for alleged breach of such Paragraphs. Periodically during the Term, the BD Defendants shall certify to Plaintiff that they have complied with the notice distribution requirements contained in Paragraphs 29 and 30. The BD Defendants shall make such certification for Paragraphs 29 and 30 annually within fourteen (14) days of the anniversary of the Effective Date for the Term of the Agreement (including once after the four year anniversary of the Agreement).

32. Within thirty (30) days of a resident requesting a retrofit set forth on the Notices to Current and Prospective Residents of Accessibility Features Available on Request, the BD Defendants shall make the requested retrofit. The same timeframe applies to requests for retrofits made by prospective residents, except that, if the dwelling unit to be leased by the prospective resident is occupied at the time the request is made, the time to perform any such retrofit shall run from the date the occupying resident vacates the dwelling unit. The BD Defendants shall maintain and retain records of all such retrofit requests, but need not share such records with Plaintiff except in the event of a proceeding by Plaintiff for alleged breach of this Paragraph. Once within fourteen (14) days of the expiration of the Common Use Area Retrofit Period, once within fourteen (14) days of the expiration of the Required Retrofit Period, and thereafter annually within fourteen (14) days after the anniversary of the Effective Date, the BD

Defendants shall provide to Plaintiff a retrofit request log in the form attached as Exhibit D for each Subject Property, recording all such retrofits requested.

33. The BD Defendants shall comply with the deadlines set forth in Exhibit A and throughout this Agreement. To the extent that the BD Defendants are unable to comply with any such deadline, despite having used their best efforts, the BD Defendants shall advise Plaintiff at least ten (10) days prior to the deadline, in writing and with specificity, which deadline cannot be met and the reasons it cannot be met. Plaintiff will not unreasonably withhold its consent to a reasonable extension of time for the BD Defendants to perform the retrofit. The deadlines under this Section may be extended or modified by written agreement of the BD Defendants and Plaintiff without further order of the Court, so long as the extension or modification would not affect the Term of the Agreement.

34. If a resident of a unit scheduled to undergo a retrofit pursuant to Exhibit A is dislocated from the unit for more than a fourteen (l4) consecutive hour period, the BD Defendants (at their option) shall either provide the resident with alternative housing in an available furnished unit at the Subject Property where the resident resides or pay such resident the applicable federal government per diem rate for food and lodging for the New York City area (currently available at https://www.gsa.gov/travel/plan-book/per-diem-rates) for each day or half-day such resident is dislocated or will experience undue inconvenience or hardship. If the per diem option is selected, the payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the payment to obtain alternative living accommodations while dislocated. The BD Defendants shall maintain and retain records of all such per diem payments, but need not share such records with Plaintiff except in the event of a proceeding by Plaintiff for alleged breach of this Paragraph. Once within fourteen (14) days of

the expiration of the Common Use Area Retrofit Period, once within fourteen (14) days of the expiration of the Required Retrofit Period, and thereafter annually within fourteen (14) days of the anniversary of the Effective Date, the BD Defendants shall provide to Plaintiff a log of per diem payments for each Subject Property that shows the date and amount of each payment and the dwelling unit of the resident to whom it was paid.

35. Current and prospective residents may not be charged any additional rent, deposit, fee, or other consideration, as consideration for the retrofits in those units in which retrofits (whether completed or not) are required. Nothing in this Paragraph precludes the BD Defendants or their successor owners or managers from implementing rent increases, or imposing fees for any other permissible reason, at any Subject Property.

36. The sale or transfer, in whole or in part, of an ownership interest in a Subject Property by any of the BD Defendants shall not affect the BD Defendants' obligation to complete the retrofits required by this Agreement. Should any of the BD Defendants sell or transfer any ownership interest in any of the Subject Properties prior to the completion of the retrofits required by this Agreement, the applicable BD Defendant(s) shall provide written notice to each buyer or transferee that the applicable BD Defendant(s) are required to complete the retrofits required by this Agreement, and the applicable BD Defendant(s) shall either (i) provide written certification to FHJC that all of the retrofits required to be completed, including those available on request, have been completed prior to the sale or transfer, or (ii) obtain written consent of the buyer(s)/transferee(s) to allow the BD Defendants to complete the retrofits required by this Agreement, including those available on request, after the sale/transfer ("Retrofit Consent"), and/or (iii) cause the buyer/transferees to assume all of the retrofit obligations of the applicable BD Defendant(s) set forth in this Agreement ("Retrofit Assumption"). In the event

that any BD Defendant enters into a sale or transfer of any of the Subject Properties without being able to certify that all retrofits required by this Agreement have been completed, including those available on request, the applicable BD Defendant(s) shall provide FHJC with a copy of the Retrofit Consent or Retrofit Assumption, whichever applies, within fourteen (14) days following the sale or transfer of any Subject Property.

37. The BD Defendants shall retain, at their cost, an inspector to inspect the retrofits completed at the Subject Properties pursuant to this Agreement (the "Inspector"). The BD Defendants have proposed and Plaintiff has accepted Code Consultants, Inc. as Inspector. If Code Consultants, Inc. is unable or unwilling to conduct an inspection within the time frame specified in this Agreement, the BD Defendants and Plaintiff shall jointly agree to an alternative Inspector.

38. The Inspector shall conduct at least two on-site inspections of the completed retrofits at all five Subject Properties to determine whether they are compliant with this Agreement ("Required Inspection"). The first Required Inspection shall occur within thirty (30) days following the expiration of the Common Use Area Retrofit Period and shall include all common use area retrofits and all dwelling unit retrofits that have been completed at the Subject Properties at that time. The second Required Inspection shall occur within thirty (30) days following the expiration of the Required Retrofit Period and shall include all completed dwelling unit retrofits not previously inspected.

39. The BD Defendants shall ensure the Inspector has full access to the common use areas and the dwelling units to be inspected during each of the Required Inspections.

40. The BD Defendants shall give FHJC at least fourteen (14) days' notice of each Required Inspection and permit an FHJC representative to attend each Required Inspection at FHJC's sole expense.

41. Within thirty (30) days after each of the Required Inspections described in Paragraph 38, the Inspector shall provide a written report to the BD Defendants and to Plaintiff, which shall identify (a) the common use area retrofits and apartments that were inspected, (b) any items that are not compliant with the retrofit plan detailed in Exhibit A; and (c) for compliant items, certification that the retrofits have been completed in accordance with Exhibit A and in a good and professional manner ("Report"). For any non-compliant item, the Report shall identify the item and the non-compliant condition. The BD Defendants agree to correct any deficiency identified by the Inspector within thirty (30) days of receiving the Report. The Inspector will then conduct an additional inspection of all identified non-compliant items and provide a written report to the BD Defendants and to Plaintiff identifying any remaining non-compliant items and the non-compliant conditions thereof, and certifying that for compliant items, the retrofits have been completed in accordance with Exhibit A and in a good and professional manner. The BD Defendants agree to repeat this process until the Inspector certifies in writing that all retrofits have been performed in accordance with this Agreement and in a good and professional manner.

42. The BD Defendants shall permit FHJC to conduct additional inspections during the Term, at FHJC's own expense, following the completion of the Inspector's final inspection, to ensure compliance with retrofits made upon request of residents pursuant to Exhibit A. FHJC may conduct such inspections no more than once annually.

**SECTION V: FAIR HOUSING COMPLIANCE**

43. Defendants agree to comply with the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. (the "FHA"); the New York State Human Rights Law, New York Executive Law § 296 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq*. (the "NYCHRL") in all future design and construction projects.

44. Defendants agree not to discriminate against any individual on the basis of disability.

45. Defendants, their officers, employees, successors, and assigns agree not to retaliate against, intimidate, threaten, or interfere with Plaintiff or Plaintiff's directors or employees on account of them having aided or encouraged Plaintiff or having aided or encouraged any other person in the exercise or enjoyment of any right protected by federal, state, or local fair housing laws.

46. Within thirty (30) days of the Effective Date, Defendants shall adopt and distribute to all of their employees the Statement of Non-Discrimination annexed hereto as Exhibit E.

47. Once within fourteen (14) days of the expiration of the Common Use Area Retrofit Period, once within fourteen (14) days of the expiration of the Required Retrofit Period, and thereafter annually within fourteen (14) days of the anniversary of the Effective Date, for each Subject Property, the BD Defendants shall provide to the New York non-profit organizations identified on Exhibit F a letter that includes a description of the types of units at the Subject Properties, links to the Subject Properties' web pages, and a general statement of available accessibility features, substantially in the form annexed hereto as Exhibits G-1 through G-5. Such notice may be provided by electronic means. The BD Defendants shall provide FHJC

with a written copy evidencing the distribution of the each of these notices within fourteen (14) days of their distribution.

48. Beginning thirty (30) days after the Effective Date, the BD Defendants shall include the fair housing logo, which is attached hereto as Exhibit H, and the Statement of Non-Discrimination, which is attached hereto as Exhibit E, on the websites they own for any BD Covered Site, on any print advertisements they own for any BD Covered Site, on the residential rental applications they furnish for any BD Covered Site, and on the leases they furnish for any BD Covered Site. Any existing hard copies of such materials not yet in circulation shall be replaced with versions including the fair housing logo and Statement of Non-Discrimination.

49. Beginning thirty (30) days after the Effective Date, ND Architecture shall include the fair housing logo, which is attached hereto as Exhibit H, on its website.

50. Beginning thirty (30) days after the Effective Date, the BD Defendants shall display in the common area of each BD Covered Site, in a manner plainly visible to all visitors to the property, a Department of Housing and Urban Development fair housing poster, in the form attached hereto as Exhibit I, having dimensions of at least 11 inches by 14 inches.

51. Beginning thirty (30) days after the Effective Date, the BD Defendants shall display in the common area of each BD Covered Site, in a manner plainly visible to all visitors to the property, the Statement of Non-Discrimination, in the form attached hereto as Exhibit E, having dimensions of at least 11 inches by 14 inches.

52. Within 180 days of the Effective Date, the principals of each Defendant shall each, at their own expense, attend a four-hour training to be provided by an FHJC-approved third party trainer. The BD Defendants' attendees will attend a training held by Scott Moore. ND Architecture's attendees shall attend a training taught by an individual enumerated on the list of

FHJC-approved fair housing trainers, attached hereto as Exhibit J. Each such training shall cover the following topics: (i) the design and construction requirements of the Fair Housing Act, the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law as applied to residential dwellings; (ii) the duty to comply with federal, state, and local fair housing laws; (iii) and the duty to grant requests for reasonable accommodations or modifications. Such training(s) may each be provided virtually (via Zoom or other similar video conferencing platform) and shall occur within 180 days after the Effective Date. Within 194 days of the Effective Date, each Defendant shall provide written certification to FHJC of completion of the required training by each of its principals.

**SECTION VI: OTHER DESIGN & CONSTRUCTION**

53. Once within fourteen (14) days of the expiration of the Common Use Area Retrofit Period, once within fourteen (14) days of the expiration of the Required Retrofit Period, and thereafter annually within fourteen (14) days of the anniversary of the Effective Date, the BD Defendants will provide FHJC with a report containing specified information ("Covered Project Report") on BD Covered Sites, excluding the Subject Properties. Each Covered Project Report shall identify (i) the name and address of each BD Covered Site; (ii) a description of the property and the individual units; (iii) the identity of the civil engineer of record; and (iv) the identity of the architect of record.

54. During the Term, the BD Defendants will retain theACCESSparternship, l.p. as an independent consultant ("Independent Consultant") to help ensure that any BD Covered Site complies with the FHA, the NYSHRL, the NYCHRL where applicable, and 29 U.S.C.A. § 794(a) (the federal "Rehabilitation Act") where applicable ("Accessibility Requirements"). In the event that theACCESSpartnership, l.p. is unable or unwilling to perform this role, the BD

Defendants and Plaintiff shall jointly agree to an alternative Independent Consultant. Prior to submission of final design plans for any BD Covered Site, the BD Defendants will cause the Independent Consultant to review the final design plans. Prior to the completion of construction of each BD Covered Site, the BD Defendants will cause the Independent Consultant to conduct a site inspection. The Independent Consultant will identify in writing conditions that are not in compliance with the applicable Accessibility Requirements, or, if constructed as designed, would not be in compliance with the applicable Accessibility Requirements. For all such projects, the BD Defendants agree to remediate any such conditions prior to the completion of construction. Upon the filing for a final certificate of occupancy, the Independent Consultant will provide to Plaintiff a certification that both the final design plans and as-built conditions for the BD Covered Site comply with all applicable Accessibility Requirements.

55. Notwithstanding the requirements of Paragraph 54, in the event that ND Architecture is the architect of record for a BD Covered Site, the BD Defendants need not cause the Independent Consultant to review the final design plans or to provide Plaintiff with a certification that the final design plans comply with all applicable Accessibility Requirements.

56. Notwithstanding the requirements in Paragraph 54, in the event that submission of final design plans for a BD Covered Site occurred prior to the Effective Date, the BD Defendants need not cause the Independent Consultant to review the final design plans or to provide Plaintiff with a certification that the final design plans comply with all applicable Accessibility Requirements.

57. During the Term, ND Architecture shall not prepare drawings to be filed with the building department of appropriate jurisdiction for any ND Covered Site that is subject to the design and construction requirements of any of the FHA, the NYSHRL, the NYCHRL, and the

Rehabilitation Act ("Covered Drawings") without retaining or causing the retention of an independent consultant with expertise in fair housing accessibility requirements (the "Independent Architectural Consultant") to review the architectural plans and specifications relating to the Covered Drawings for compliance with the Accessibility Requirements. The parties agree that the Independent Architectural Consultant shall be one of the following: (1) Steven Winter & Associates; (2) theACCESSpartnership, l.p.; or (3) Mark Jackson. In the event that all three of these entities are unavailable or unwilling to perform this role, ND Architecture and Plaintiff shall jointly agree to an alternative Independent Architectural Consultant. The Independent Architectural Consultant will provide a written report to ND Architecture affirming that each set of Covered Drawings is in compliance or, if it is not in compliance, detailing any identified non-compliant conditions and proposing solutions for each identified non-compliant condition.

58. In the event that ND Architecture contributes work to a project after submission of final drawings, ND Architecture will retain or cause the retention of the Independent Architectural Consultant to review ND Architecture's approximately 75% Construction Documents ("Covered Documents") for compliance with the Accessibility Requirements, where applicable. The Independent Architectural Consultant will provide a written report to ND Architecture affirming that each set of Covered Documents is in compliance or, if it is not in compliance, detailing any identified non-compliant conditions and proposing solutions for each identified non-compliant condition.

59. ND Architecture agrees to implement the solutions proposed by the Independent Architectural Consultant.

60. ND Architecture shall retain a copy of all reports, opinions, and/or substantive communications regarding compliance by or with the Independent Architectural Consultant relating to the Covered Drawings and Covered Documents.

61. Within fourteen (14) days of each anniversary of the Effective Date, ND Architecture shall provide certifications to FHJC that its Covered Drawings and Covered Documents have been reviewed for accessibility compliance by the Independent Architectural Consultant and that it has implemented the solutions proposed by the Independent Architectural Consultant.

## SECTION VII: RELEASES

62. Except for the right to enforce the terms of this Agreement, including the obligations assumed by Defendants hereunder, and in exchange for adequate consideration as set forth herein, FHJC, on behalf of itself and its directors, officers, employees, testers, parents, subsidiaries, affiliated entities, successors, assigns, agents, trustees, insurers, and attorneys, fully and forever releases, acquits, and discharges with prejudice, subject to the terms of this Agreement, Defendants, and each of their respective affiliates, joint venturers, joint venture partners, direct and indirect parent companies, direct and indirect subsidiary companies, beneficial owners or indirect beneficial owners, equityholders or indirect equityholders, lenders, insurers, and reinsurers, and each of their respective, principals, partners, directors, employees, agents, representatives, officers, attorneys, heirs, assigns, and successors in interest, from any and all liability, claims, or rights of action, of any kind or nature whatsoever, that arise from or relate in any way to the allegations set forth or described in the Complaint in this action, whether known or unknown, including all claims for reasonable attorneys' fees and costs (hereinafter, the

"Released Claims"); provided however, that Released Claims do not include any claims to enforce any provision of this Agreement.

63. Except for the right to enforce the terms of this Agreement, including the obligations assumed by FHJC hereunder, and in exchange for adequate consideration as set forth herein, each Defendant, on its own behalf and on behalf of its parents, subsidiaries, affiliated entities, successors, assigns, members, owners, directors, officers, agents, trustees, insurers, and attorneys, fully and forever releases, acquits, and forever discharges with prejudice FHJC, together with its directors, officers, employees, testers, parents, subsidiaries, affiliated entities, successors, assigns, agents, trustees, insurers, and attorneys, and each other Defendant, together with each of their respective affiliates, joint venturers, joint venture partners, direct and indirect parent companies, direct and indirect subsidiary companies, beneficial owners or indirect beneficial owners, equityholders or indirect equityholders, lenders, insurers, and reinsurers, and each of their respective principals, partners, directors, employees, agents, representatives, officers, attorneys, heirs, assigns, and successors in interest, from any and all liability, claims, or rights of action, of any kind or nature whatsoever, that arise from or relate in any way to the allegations set forth or described in the Complaint in this action, whether known or unknown, including all defense and indemnification obligations, and all claims for reasonable attorneys' fees and costs.

64. Within five (5) days after the payments required by Paragraph 20 above are made, counsel for the Parties shall execute, and counsel for FHJC shall file in the action, the Stipulation and Order of Dismissal that is attached hereto to Exhibit K.

**SECTION VIII: CONTINUING JURISDICTION AND DISPUTE RESOLUTION**

65. The Court shall retain jurisdiction to enforce the terms of this Agreement.

66. The Parties shall endeavor in good faith to informally resolve any differences regarding the interpretation of and compliance with this Agreement.

67. Prior to moving to enforce this Agreement before this Court or any other court, FHJC shall provide each affected Defendant with written notice of any allegation of non-compliance with this Agreement and provide such Defendant(s) with thirty (30) days in which to cure any alleged noncompliance. The Parties shall confer during such thirty-day cure period and attempt in good faith to resolve the alleged noncompliance by agreement. If the Parties are unable to reach an agreement at the conclusion of such thirty-day cure period, FHJC may seek judicial relief. For the avoidance of doubt, no Defendant shall have any vicarious or joint and several liability for any breach of this Agreement by another Defendant.

68. If FHJC prevails on any motion to enforce this Agreement before the Court or any other court, FHJC shall be entitled to recover from the affected Defendant all attorneys' fees and costs reasonably incurred in connection with such motion.

**SECTION IX: MISCELLANEOUS**

69. Any notice, demand, request, waiver, or other communication under this Agreement shall be in writing (including facsimile, email, or other similar electronic writing) and shall be transmitted by email as follows:

If to FHJC, to:

davidberman@fairhousingjustice.org
mwang@wanghecker.com;
areiter@wanghecker.com;
hgregorio@wanghecker.com; and
mhadley@wanghecker.com.

If to the BD Defendants:

tkitay@bakerdonelson.com
skidd@bakerdonelson.com

ryancey@bakerdonelson.com

If to ND Architecture to:

gstrong@GLLawgroup.com
nd_architecture@yahoo.com

Any party may change its designated recipients by providing written notification to the individuals listed above.

70. This Agreement will be deemed to have been jointly drafted, and no provision herein will be interpreted or construed for or against any Party because such Party drafted or requested such provision or this Agreement as a whole.

71. Any part or provision of this Agreement which is prohibited by law or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

72. This Agreement constitutes the entire agreement between and among the Parties hereto as to the subject matter of this Agreement and supersedes all prior agreements and understandings, written or oral, with respect thereto. Any amendment to, or waiver of, this Agreement must be agreed to in writing by each affected Party. No waiver by any Party hereto of any breach by any other Party hereto of any provision of this Agreement to be performed by such other Party shall be deemed a waiver of a similar or any other breach or provision at the same or at any prior or subsequent time.

73. This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to choice of law doctrine) and applicable federal law.

74. This Agreement may be executed in one or more counterparts (including by electronic transmission), each of which shall be deemed to be an original and all of which

together shall be deemed to be one and the same instrument. Signatures by facsimile, pdf, or other electronic imaging shall be deemed to constitute original signatures.

**THIS REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK.**

**AGREED TO BY THE PARTIES:**

For FAIR HOUSING JUSTICE CENTER, INC., ***Plaintiff***:

____________________________

By:
Title:
Date:

For ND ARCHITECTURE & DESIGN P.C., ***Defendant***:

____________________________

By:
Title:
Date:

For WATERMARK CAPITAL GROUP LLC, ***Defendant:***

____________________________

By: Wolfe Landa
Title: membe
Date: 3/11/26

For WATERMARK CAPITAL MANAGEMENT LLC, ***Defendant***:

____________________________

By:
Title:
Date:

For 4TH AVENUE 002B LLC, *Defendant:*

____________________________

By: D TARAK
Title: member
Date: 3/6/26

For ONE ZERO ONE LLC, *Defendant:*

____________________________
By: CHESKY LANDAU
Title: MEMBER
Date: 3/6/26

For 303 WYTHE AVE LLC, *Defendant:*

____________________________
By: CHESKY LANDAU
Title: MEMBER
Date: 3/6/26

CHESKY LANDAU A/K/A CHASKEL LANDAU, *Defendant:*

____________________________
Date: 3/6/26

For 1428 PUTNAM TOWERS LLC, *Defendant:*

____________________________
By: CHESKY LANDU
Title: 3/6/26
Date: MEMBER

For 143 GRAHAM LLC, *Defendant:*

____________________________
By: D TABAK
Title: MEMBER
Date: 3/6/26

For BARCLAY USA LLC, *Defendant:*

____________________________
By: SHULEM KESSLER
Title: MEMBER
Date: 3/6/26

For THE LOKETCH GROUP INC., Defendant:

[signature]

By: MOSHE LOKETCH
Title: MEMBER
Date: 3/6/26

For B CONTRACTORS GROUP LLC, *Defendant:*

[signature]

By: MENDEL BERKOVIC
Title: MEMBER
Date: 3/6/26

For WMCM LLC, *Defendant:*

[signature]

By: SHULEM KESSLER
Title: MEMBER
Date: 3/6/26

For EMPIRE MANAGEMENT & CONSTRUCTION LLC, *Defendant:*

[signature]

By: Y A WEISS
Title: MEMBER
Date: 3/6/26

For YATZIV CORP, *Defendant*:

[signature]

By: YAKOB WORTZBERGER
Title MEMBER
Date: 3/6/26

**THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK.**

**AS TO FORM OF AGREEMENT ONLY:**

Dated: March 9, 2026

WANG HECKER LLP

By: ______________________

Alice G. Reiter
Heather Gregorio
Maggie Hadley
Mariann Wang
111 Broadway, Suite 1406
New York, New York 10006
(212) 620-2600

*Attorneys for Plaintiff Fair Housing Justice Center, Inc.*

Dated: March 9, 2026

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC

By: ______________________

Theresa L. Kitay
Sterling Kidd
3414 Peachtree Road, NE
Monarch Plaza
Suite 1500
Atlanta, Georgia 30326
(404) 443-6745

*Attorneys for Defendants Watermark Capital Group LLC, Watermark Capital Management LLC, 4th Avenue QOZB LLC, One Zero One LLC, 303 Wythe Avenue LLC, Chesky Landau a/k/a Chaskel Landau, 1428 Putnam Towers LLC, 143 Graham LLC, Barclay USA LLC, The Loketch Group Inc., B Contractors Group LLC, WMCM LLC, Empire Management & Construction LLC, and Yatziv Corp.*

**AGREED TO BY THE PARTIES:**

For FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*:

Michele Cortese

By: Michele Cortese
Title: Interim Executive Director
Date: 3.6.26

For ND ARCHITECTURE & DESIGN P.C., *Defendant*:

By:
Title:
Date:

For WATERMARK CAPITAL GROUP LLC, *Defendant:*

By:
Title:
Date:

For WATERMARK CAPITAL MANAGEMENT LLC, *Defendant*:

By:
Title:
Date:

For 4TH AVENUE QOZB LLC, *Defendant:*

By:
Title:
Date:

**AGREED TO BY THE PARTIES:**

For FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*:

______________________________
By:
Title:
Date:

For ND ARCHITECTURE & DESIGN P.C., *Defendant*:

Nataliya Donskoy
______________________________
By: Nataliya Donskoy RA LEED AP BD+C
Title: Principal
Date: 03/09/2026

For WATERMARK CAPITAL GROUP LLC, *Defendant:*

______________________________
By:
Title:
Date:

For WATERMARK CAPITAL MANAGEMENT LLC, *Defendant*:

______________________________
By:
Title:
Date:

For 4TH AVENUE QOZB LLC, *Defendant:*

______________________________
By:
Title:
Date:

Dated: ____________________, 2026

GFELLER LAURIE LLP

By: __________________________

Gary Strong
105 College Road East, 2nd Floor
Princeton, NJ 08540
(609) 776-3102

*Attorneys for Defendant ND Architecture & Design P.C.*

IT IS SO ORDERED:

*/s/ Hector Gonzalez*
Hon. Hector Gonzalez, U.S.D.J.
Date: March 13, 2026

**AGREED TO BY THE PARTIES:**

For FAIR HOUSING JUSTICE CENTER, INC., *Plaintiff*:

______________________________
By:
Title:
Date:

For ND ARCHITECTURE & DESIGN P.C., *Defendant*:

______________________________
By:
Title:
Date:

For WATERMARK CAPITAL GROUP LLC, *Defendant:*

______________________________
By:
Title:
Date:

For WATERMARK CAPITAL MANAGEMENT LLC, *Defendant*:

______________________________
By: D TABAK
Title: member
Date: 3/6/26

For 4TH AVENUE QOZB LLC, *Defendant:*

______________________________
By: D TABAK
Title: member
Date: 3/6/26

For ONE ZERO ONE LLC, *Defendant:*

______________________________

By: CHESKY LANDAU
Title: MEMBER
Date: 3/6/26

For 303 WYTHE AVE LLC, *Defendant:*

______________________________

By: CHESKY LANDAU
Title: MEMBER
Date: 3/6/26

CHESKY LANDAU A/K/A CHASKEL LANDAU, *Defendant:*

______________________________

Date: 3/6/26

For 1428 PUTNAM TOWERS LLC, *Defendant:*

______________________________

By: CHESKY LANDAU
Title: 3/6/26
Date: MEMBER

For 143 GRAHAM LLC, *Defendant:*

______________________________

By: D TABAK
Title: MEMBER
Date: 3/6/26

For BARCLAY USA LLC, *Defendant:*

______________________________

By:
Title:
Date:

For THE LOKETCH GROUP INC., Defendant:

By: MOSHE LOKETCH
Title: MEMBER
Date: 3/6/26

For B CONTRACTORS GROUP LLC, *Defendant:*

By: MENDEL BERKUNK
Title: MEMBER
Date: 3/6/26

For WMCM LLC, *Defendant:*

By:
Title:
Date:

For EMPIRE MANAGEMENT & CONSTRUCTION LLC, *Defendant:*

By: YA WEISS
Title: MEMBER
Date: 3/6/26

For YATZIV CORP, *Defendant*:

By: YAKUB WORTZBERGER
Title MEMBER
Date: 3/6/26

**THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK.**

Dated: March 6, 2026

GFELLER LAURIE LLP

By: ______________________________
Gary Strong
105 College Road East, 2nd Floor
Princeton, NJ 08540
(609) 776-3102

*Attorneys for Defendant ND Architecture & Design P.C.*

IT IS SO ORDERED:

*/s/ Hector Gonzalez*
Hon. Hector Gonzalez, U.S.D.J.
Date: March 13, 2026